991 P.2d 388

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Robert Daniel DEWBRE,
Defendant-Appellant.**

No. 24748.

Court of Appeals of Idaho.

Nov. 24, 1999.

Featherston Law Firm, Sandpoint, for appellant. Brent C. Featherston argued.

Hon. Alan G. Lance, Attorney General; Rebekah A. Cude, Deputy Attorney General, Boise, for respondent. Rebekah A. Cude argued.

PERRY, Chief Judge.

Robert Daniel Dewbre appeals from the district court's order affirming the magistrate's denial of Dewbre's motion to suppress evidence. For the reasons set forth below, we affirm.

## I.

### BACKGROUND AND PROCEDURE

Just after midnight on June 1, 1996, an Idaho State police officer was traveling on Highway 57 in Bonner County, when he began following Dewbre's vehicle. Highway 57 is a two-lane road with an occasional passing area where the single one-directional lane splits into two, creating a temporary passing lane. Dewbre entered one of these passing areas. A sign was located near the beginning of the passing area directing traffic to stay to the right except to pass. Two traffic signs and painted arrows on the roadway near the end of the passing area advised traffic that the passing lane was ending and that traffic should merge left. Upon entering this passing area, Dewbre moved his vehicle into the right lane. After driving beyond the last dashed line at the end of the passing area, Dewbre moved his vehicle from the right lane into the remaining single lane. Because Dewbre failed to signal while making these maneuvers, the officer stopped Dewbre for violating I.C. § 49–808.

Based on evidence obtained during the traffic stop, Dewbre was charged with being a minor driving under the influence. Dewbre moved to suppress all evidence obtained as a result of the traffic stop. Following an evidentiary hearing, the magistrate denied

Dewbre's motion to suppress. Dewbre moved for reconsideration, and the magistrate denied the motion. Dewbre entered a conditional guilty plea, reserving the right to appeal the denial of his suppression motion. Dewbre appealed to the district court, which affirmed the magistrate's denial of Dewbre's motion to suppress. Dewbre again appeals.

## II.

### STANDARD OF REVIEW

■ On review of a decision of the district court, rendered in its appellate capacity, we examine the record of the trial court independently of, but with due regard for, the district court's intermediate appellate decision. *State v. Bitt*, 118 Idaho 584, 585 n. 1, 798 P.2d 43, 44 n. 1 (1990); *State v. Bowman*, 124 Idaho 936, 939, 866 P.2d 193, 196 (Ct. App.1993). The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which were supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996).

## III.

### ANALYSIS

■ On appeal, Dewbre argues that the traffic stop of his vehicle violated the Fourth Amendment's prohibition against unreasonable seizures and that the district court, therefore, erred in affirming the magistrate's denial of Dewbre's motion to suppress evidence. A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1395, 59 L.Ed.2d 660, 667 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is an articulable and reasonable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417,

101 S.Ct. 690, 694, 66 L.Ed.2d 621, 628 (1981); *State v. Rawlings*, 121 Idaho 930, 932, 829 P.2d 520, 522 (1992); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct.App.1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Naccarato*, 126 Idaho 10, 12, 878 P.2d 184, 186 (Ct.App.1994). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id.*

In the instant case, Dewbre contends that the officer lacked the requisite suspicion to stop his vehicle because I.C. § 49–808 does not require the use of signals when entering or exiting a passing area. The relevant portion of I.C. § 49–808 provides that no person "shall turn a vehicle or move right or left upon a highway unless and until the movement can be made with reasonable safety nor without giving an appropriate signal." Dewbre contends that I.C. § 49–808 requires the use of turn signals only when a vehicle turns or makes a lane change. Dewbre contends that he did not turn or change lanes, that he continued in the same lane while entering and exiting the passing area, and that he, therefore, was not required to use his signal. Dewbre also argues that I.C. § 49–808 requires the use of signals only when appropriate and that no turn signal is the "appropriate signal" when the vehicle movement can be made with reasonably safety.

■ This Court exercises free review over the application and construction of statutes. *State v. Schumacher*, 131 Idaho 484, 485, 959 P.2d 465, 466 (Ct.App.1998). Generally, "[w]ords and phrases are construed according to the context and the approved usage of the language." I.C. § 73–113. A statute must be construed so that effect is given to every word and clause of a statute. *State v. Baer*, 132 Idaho 416, 417–18, 973 P.2d 768, 769–70 (Ct.App.1999). The task of the court "in interpreting the meaning of language contained in a statute is to give effect to the legislature's intent and purpose." *State v. Coleman*, 128 Idaho 466, 469, 915 P.2d 28, 31 (Ct.App.1996). There is no occasion for construction where the language

of a statute is plain and unambiguous. *State v. McCoy*, 128 Idaho 362, 365, 913 P.2d 578, 581 (1996). "The plain, obvious and rational meaning is always preferred to any hidden, narrow or irrational meaning." *State v. Arrasmith*, 132 Idaho 33, 40, 966 P.2d 33, 40 (Ct.App.1998).

The language of I.C. § 49–808 is plain and unambiguous and must be given effect. The following holding from the district court's order affirming the magistrate's denial of Dewbre's suppression motion correctly analyzes the statute's application:

> When Dewbre approached the portion of the highway containing a passing lane, the sign required him to "keep right accept to pass." As such, Dewbre *moved his vehicle to the right* to comply with this requirement. When Dewbre reached the end of the portion of the highway that contained a passing lane, the record clearly establishes that there was a sign requiring Dewbre to merge back into the left lane. This required a turning *movement to the left*. It is undisputed the [*sic* ] Dewbre made these movements, and it is also undisputed that he did not signal when he made either turn. By failing to signal when he made these turns, Dewbre violated I.C. § 49–808.

> It is true that at the point Dewbre made these turning maneuvers, the dashed line did not separate the left and right northbound lanes. However, the statute does not strictly limit its application to the lane changes. Instead, the statute requires a signal whenever an individual makes a "move right or left upon a highway." Had the legislature intended only to regulate turns and lane changes, it could have stated so specifically. By moving first right, and then left, Dewbre came within the ambit of the statute, and was required to make to [*sic* ] signal.

(Emphasis added.).

■■■ I am constrained to agree. Upon entering the passing area, Dewbre *moved his vehicle to the right* in order to comply with the highway signage. Upon exiting the passing area, Dewbre *moved his vehicle to the left*, complying once again with the highway signage. There are no exceptions in I.C. § 49–808 to the signal requirement. *State v. Pressley*, 131 Idaho 277, 279, 954 P.2d 1073, 1075 (Ct.App.1998). Whenever a movement is made to the left or right on a highway, regardless of whether the movement is made necessary to comply with highway signage, an appropriate signal is required pursuant to I.C. § 49–808.

I do not attempt by this holding to define the boundaries of what constitutes a "movement to the right or left upon a highway." I conclude only that Dewbre's movements placed him within the ambit of the statute. Until further clarification is provided by the Idaho legislature, I am constrained to hold that whenever a vehicle moves to the right or to the left because one lane splits into two lanes, or two lanes merge into one lane, an appropriate signal is required pursuant to I.C. § 49–808. Therefore, I.C. § 49–808 required Dewbre to use an appropriate signal when he moved to the right while entering the passing area and then to the left while exiting the passing area.

■■■ Dewbre further argues that no signal is the appropriate signal when the vehicle movement can be made with reasonably safety. The plain language of I.C. § 49–808 provides that an individual may "move right or left upon a highway" if two requirements are met: (1) if "the movement can be made with reasonable safety" *and* (2) if "an appropriate signal" is given. Even if a vehicle can be moved with reasonable safety, I.C. § 49–808 still requires the use of turn signals when making the movement to the right or left. Furthermore, the Idaho legislature specifically amended the turn signal law deleting the exception Dewbre argues. Prior to the amendment, the statute provided that an appropriate signal was only required "*in the event any other traffic may be affected by such movement.*" 1953 Idaho Sess. Law 507. This exception was removed in 1977 by the Idaho legislature. 1977 Idaho Sess. Law 370. Consequently, the legislature intended that turn signals be used when moving right or left on a highway regardless of whether other traffic may be affected or a vehicle is moving with reasonable safety. I agree with the district court that an appropriate signal requires "such a signal as would put others

on notice of the driver's intention to make a turning movement, and that it was not the intent of the legislature to negate the requirement of signaling when making a turning movement."

■ Lastly, Dewbre argues that I.C. § 49–808 is unconstitutionally vague. This argument, however, was not raised below. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge,* 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Therefore, I decline to address this issue.

## IV.

## CONCLUSION

Dewbre violated I.C. § 49–808 by failing to use his turn signal when he moved his vehicle to the right and to the left on the highway. The officer, therefore, was justified in stopping Dewbre's vehicle. Accordingly, the district court's order, affirming the magistrate's denial of Dewbre's motion to suppress evidence, is affirmed.

Judge SCHWARTZMAN, Concurring in the Result.

I will concur in the result despite the fact that many an Idaho driver would, in custom and practice, see no need to operate a turn signal in this hyper-technical situation.[1]

But this case has little to do with a suspected I.C. § 49–808 traffic infraction. Given the fact that the state officer had been following our young driver for *over four miles* at 12:45 in the morning, and this is the *best* he could come up with to make a stop, two assumptions become fairly evident: 1) Dewbre did his best to drive in compliance with traffic regulations and 2) one way or the other, he was going to be stopped.

Perhaps this tension is best expressed in the following quote from *Whren v. United States,* 517 U.S. 806, 818, 116 S.Ct. 1769, 1777, 135 L.Ed.2d 89, 100 (1996):

> Petitioners urge as an extraordinary factor in this case that the "multitude of applicable traffic and equipment regulations" is so large and so difficult to obey perfectly that virtually everyone is guilty of violation, permitting the police to single out almost whomever they wish for a stop. But we are aware of no principle that would allow us to decide at what point a code of law becomes so expansive and so commonly violated that infraction itself can no longer be the ordinary measure of the lawfulness of enforcement.

Moreover, our decisions have consistently rejected the so-called "pretext challenge," i.e. the claim that the police had an *ulterior motive* for conducting the stop which was the true basis for the stop or search. *State v. Myers,* 118 Idaho 608, 798 P.2d 453 (Ct.App. 1990); *State v. Law,* 115 Idaho 769, 769 P.2d 1141 (Ct.App.1989). Thus, an officer's subjective intent is irrelevant and a stop is not pretextual where there is some objective probable cause to believe that a traffic infraction,[2] however minor, has occurred. *United States v. Hudson,* 100 F.3d 1409, 1415 (9th Cir.1996); *United States v. Michael R.,* 90 F.3d 340, 347 (9th Cir.1996); *see also State v. Schwarz,* 133 Idaho 463, 988 P.2d 689 (1999).

Accordingly, since the officer had some objective measure of probable cause to believe that Dewbre violated the traffic code, the stop would now be constitutionally reasonable and justified.

Judge Pro Tem McDERMOTT, Dissenting.

From a common-sense standpoint, it is unlikely that the Idaho Legislature intended

---

**1.** My empirical, but thoroughly unscientific, study on this observation was fully vindicated on my trip North over Highway 55/95. With the *possible* exception of myself, now fully cognizant of the impending oral argument in this case, I can attest that no signals were given by the general travelling public within my line of vision, excluding one slow-moving vehicle dutifully moving to the right. Had I.S.P. Officer Yount been with me, he could have had a *field day* handing out tickets for alleged 49–808 violations.

**2.** I take no position on whether Dewbre was actually "guilty" of a 49–808 infraction under the circumstances described. A violation might be dependent upon the line of direction a driver maintains when entering and/or exiting this two-lane passing area, not to mention traffic conditions within the area as well. Suffice it to say that it was "close enough" to make a *barely plausible* traffic stop.

the term "move," as used in Idaho Code § 49–808(1), to apply to Dewbre's driving in this case. For that reason, I respectfully dissent from the majority opinion.

Under Idaho Code § 49–808(1), a driver may not turn or "move right or left upon a highway unless and until the movement can be made with reasonable safety nor without giving an appropriate signal." In this case, Dewbre, while traveling on Highway 57, approached the designated passing lane between mileposts 6 and 7. Instead of steering into the left-hand passing lane, he remained in the right-hand lane, as the posted sign required. When the passing area ended, he merged, again as the posted sign directed, into the single lane of travel, essentially travelling in a straight direction and not "moving" his vehicle left or right. Dewbre was then stopped for failing to signal by an officer who had been following him for over four miles.

In the literal sense, I agree that Dewbre's actions constituted some form of "movement," however common sense dictates that the Idaho Legislature did not intend the statute to apply in the factual situation presented here. The word "move," as contained in Idaho Code § 49–808(1), does not require a driver to signal where the driver, obeying the posted traffic signs, remains in the right-hand lane until the highway's structure forces the driver to merge into the left-hand lane.

As the Idaho Court of Appeals held in *Smith v. Smith,* 131 Idaho 800, 802, 964 P.2d 667, 669 (Ct.App.1988), "[j]udicial interpretation of a statute should 'aim to give it sensible construction' such as will effectuate legislative intent while, if possible, avoiding an absurd conclusion." Requiring a driver to signal when he or she is traveling in essentially a straight line, and as required by the posted signs, may confuse, rather than alert, other drivers.