IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 36540

| | | |
|---|---|---|
| BRITT COLLEEN BURTON, | ) | |
| | ) | 2010 Opinion No. 63 |
| Petitioner-Appellant, | ) | |
| | ) | Filed: September 13, 2010 |
| v. | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| STATE OF IDAHO, DEPARTMENT OF | ) | |
| TRANSPORTATION, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Benewah County. Hon. Fred M. Gibler, District Judge.

Decision of the district court affirming administrative suspension of driver's license, <u>reversed</u>.

Siebe Law Offices, Moscow, for appellant. James E. Siebe argued.

Hon. Lawrence G. Wasden, Attorney General; Susan K. Servick, Special Deputy Attorney General, Coeur d'Alene, for respondent. Susan K. Servick argued.

_____

LANSING, Chief Judge

Britt Colleen Burton appeals from the district court's decision affirming the administrative suspension of her driver's license after a breath test disclosed that she had been driving with a breath alcohol content exceeding the legal limit. Burton argues on appeal that the stop of her vehicle (which led to the breath test) was unlawful because the traffic statute that she was deemed to have violated, Idaho Code § 49-808(1), is void for vagueness as applied to her. We hold that the statute is unconstitutionally vague as applied to Burton, and we therefore reverse the decision of the district court.

## I.

## BACKGROUND

On August 26, 2007, Burton was driving on a two-way, predominantly two-lane, highway when her lane of travel expanded to include a left-hand lane to be used only for passing.

1

Burton stayed in the right-hand lane, never entering the passing lane. According to Burton's subsequent testimony, as the double-lane configuration was about to end, she saw a traffic sign indicating "that the lanes merged." She did not signal a turn or lane change as she approached the end of the double-lane expanse. Burton was subsequently stopped by a patrol officer for failure to signal before moving "right or left upon [the] highway" in violation of Idaho Code § 49-808(1). While speaking with Burton, the officer became suspicious that she was intoxicated, and he asked her to submit to a breath test. Burton gave breath samples indicating a blood alcohol content in excess of the legal limit, I.C. § 18-8004. Pursuant to I.C. § 18-8002A, the Idaho Transportation Department administratively suspended Burton's license due to her failure of the breath test. Burton requested an administrative hearing to contest the suspension as authorized by I.C. § 18-8002A(7). Burton argued, among other things, that her license suspension must be vacated under I.C. § 18-8002A(7)(a) because the officer lacked legal cause to stop her vehicle. No legal cause existed, she argued, because I.C. § 49-808(1) is unconstitutionally vague as applied to the facts of her case. The administrative hearing officer concluded that he had no authority to resolve this constitutional issue and upheld the suspension. Burton appealed to the district court, making the same constitutional challenge to Section 49-808(1). The district court held that the statute is not unconstitutional as applied to Burton and therefore affirmed the hearing officer's decision.

Burton appeals from the district court's order. She argues that I.C. § 49-808(1) is void for vagueness as applied to her in this instance because it does not give fair notice that a turn signal is required when two lanes merge and does not establish minimal guidelines for uniformity in enforcement.

## II.

### DISCUSSION

The Idaho Administrative Procedures Act (IDAPA) governs the review of administrative decisions to deny, cancel, suspend, disqualify, revoke or restrict a person's driver's license. *See* I.C. §§ 49-330, 67-5270. In an appeal from the decision of the district court acting in its appellate capacity under IDAPA, this Court reviews the agency record independently of the district court's decision. *Marshall v. Idaho Dep't of Transp.*, 137 Idaho 337, 340, 48 P.3d 666, 669 (Ct. App. 2002). This Court does not substitute its judgment for that of the agency as to the weight of the evidence presented. I.C. § 67-5279(1); *Marshall*, 137 Idaho at 340, 48 P.3d at 669.

2

Instead we defer to the agency's findings of fact unless they are clearly erroneous. *Castaneda v. Brighton Corp.*, 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. A court may overturn an agency's decision, however, where its findings, inferences, conclusions or decisions: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence in the record; or (e) are arbitrary, capricious or an abuse of discretion. I.C. § 67-5279(3). The party challenging the agency decision must demonstrate that the agency erred in a manner specified in I.C. § 67-5279(3) and that a substantial right of that party has been prejudiced. *Price v. Payette County Bd. of County Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 586 (1998); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. If the agency's decision is not affirmed on appeal, "it shall be set aside . . . and remanded for further proceedings as necessary." I.C. § 67-5279(3).

Due process requires that all "be informed as to what the State commands or forbids" and that "men of common intelligence" not be forced to guess at the meaning of the criminal law. *Smith v. Goguen*, 415 U.S. 566, 574 (1974); *State v. Cobb*, 132 Idaho 195, 197, 969 P.2d 244, 246 (1998). Accordingly, the void-for-vagueness doctrine, premised upon the Due Process Clause of the Fourteenth Amendment, requires that a statute defining criminal conduct or imposing civil sanctions[1] be worded with sufficient clarity and definiteness that ordinary people can understand what conduct is prohibited, and the statute must be worded in a manner that does not allow arbitrary and discriminatory enforcement. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497-99 (1982); *State v. Korsen*, 138 Idaho 706, 711, 69 P.3d 126, 131 (2003); *State v. Martin*, 148 Idaho 31, 34, 218 P.3d 10, 13 (Ct. App. 2009). Thus, a statute may be void for vagueness if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes or if it fails to establish minimal guidelines to govern law enforcement or others who must enforce the statute. *Korsen*, 138 Idaho at 712, 69 P.3d at 132; *Martin*, 148 Idaho at 35, 218 P.3d at 14.

---

[1] The void-for-vagueness doctrine applies to statutes employing civil sanctions for violations, but the standard of certainty is less stringent than that for criminal statutes. *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 498-99 (1982); *Winters v. New York*, 333 U.S. 507, 515 (1948).

A statute may be challenged as unconstitutionally vague on its face or as applied to a complainant's conduct. *Id.* Here, Burton does not make a facial challenge but contends only that the statute is impermissibly vague as applied to her. To succeed on an "as applied" vagueness challenge, a complainant must show that the statute failed to provide fair notice that the complainant's specific conduct was prohibited or failed to provide sufficient guidelines such that police had unbridled discretion in determining whether to charge the complainant. *Martin*, 148 Idaho at 35, 218 P.3d at 14.

The statute that is challenged here, I.C. § 49-808(1), states: "No person shall turn a vehicle onto a highway or move a vehicle right or left upon a highway or merge onto or exit from a highway unless and until the movement can be made with reasonable safety nor without giving an appropriate signal." Burton contends that this statute is vague as applied to her because it does not provide fair notice that a signal is required before one drives into a single lane that stems from the merger of two lanes. The statute does not give notice, she argues, that such a continued forward movement constitutes "moving" a vehicle "right or left upon a highway."

This Court addressed a related but distinct issue in *State v. Dewbre*, 133 Idaho 663, 991 P.2d 388 (Ct. App. 1999). The driver there contended that the signal requirement defined in Section 49-808 did not apply where a two-lane portion of a highway ended and two traffic signs as well as painted arrows on the highway advised motorists that the right lane was ending and traffic should merge left. The *Dewbre* case generated a separate opinion from each of the three Court of Appeals judges. The lead opinion stated that the signal requirement applied in that circumstance. A second judge concurred in that result but did not join in the lead opinion's reasoning, and the third judge dissented. The *Dewbre* opinion does not have precedential value bearing upon the present case for several reasons. First, the Court in *Dewbre* was not called upon to address the constitutional issue presented here. Second, there was no opinion that commanded a majority, and third, *Dewbre* is factually distinguishable because in *Dewbre*, road signs and arrows on the roadway informed motorists that the right-hand lane was ending and that traffic must merge into the surviving, left-hand lane. In the present case, there is no evidence of such signage or other indicator that one lane was ending and the other surviving.

The officer's description of the event is cryptic. His affidavit states only that he stopped Burton's vehicle after he observed it "fail to signal when it merged lanes." At the administrative

4

hearing, Burton testified that in the two-lane segment of the highway there was a passing lane on the left, but she was traveling in the right lane, and when the two lanes became one, "the left lane disappeared." She said that she passed a sign which said that the lanes were going to merge, but there was no evidence of signage indicating that one lane was terminating and one continuing.

We are persuaded that there is merit in Burton's contention that Section 49-808(1) is unconstitutionally vague as applied in this circumstance, for the statute does not clearly indicate that a signal is required when two lanes merge with neither lane clearly ending and neither clearly continuing. This situation differs significantly from that where one of two lanes ends and the other continues, as occurred in *Dewbre*. In the *Dewbre* circumstance, the statute plainly requires a signal because a driver in the terminating lane must change lanes in order to continue travel on the highway, and changing lanes constitutes a move to the left or right. But when there is no basis to discern that one lane is terminating and the other surviving, but rather the two blend into a single lane, it is not clear that the continued forward movement of a vehicle from either of the two lanes into the emerging lane constitutes a "move . . . right or left" that is subject to the Section 49-808(1) signal requirement.

This vagueness in application occurs because the statute does not specify how much or what type of movement to the left or right is necessary to trigger the duty to signal. Admittedly, a very literal interpretation of the statute might lead to a conclusion that a signal is required when two lanes simply merge because a driver in either lane must move the steering wheel at least slightly in order to steer into the emerging lane. But the statute cannot reasonably be given an utterly literal application to *every* type of side-to-side movement, for a vehicle literally moves to the left or the right when a driver weaves a bit within his or her lane or simply negotiates a bend in the road, but no one would contend that a signal is required in those instances.

It is simply not apparent from the language of Section 49-808(1) whether a signal is required when two lanes blend into one. Persons of ordinary intelligence can only guess at the statute's directive in this circumstance. Therefore, the statute is unconstitutionally vague as applied to Burton's conduct.

Because Section 49-808(1) could not be constitutionally applied to her, Burton has shown that no legal cause existed to effectuate the traffic stop that led to her breath tests. We therefore reverse the district court's decision affirming the administrative suspension of Burton's driver's license. Costs on appeal to appellant.

5

Judge MELANSON **CONCURS.**

Judge GRATTON, **SPECIALLY CONCURRING**.

The Court holds that Idaho Code § 49-808(1) is unconstitutional as applied to Burton. The statute reads:

> No person shall turn a vehicle onto a highway or move a vehicle right or left upon a highway or merge onto or exit from a highway unless and until the movement can be made with reasonable safety nor without giving an appropriate signal.

I begin with a review of the circumstances existing, according to the record, to which the constitutional analysis is applied. The only evidence in the record from the State that relates to the roadway configuration or basis for the stop is the officer's probable cause affidavit, which indicated that Burton "failed to signal when merging lanes." The officer did not testify at the administrative hearing and the State presented no evidence relative to the roadway itself. Although the officer referred to "merging," the signaling requirement in the statute specific to merging is triggered only when there is a "merge onto or exit from a highway." There is no evidence in the record that Burton was merging onto or exiting from the highway. So, the only language in the statute which the phrase "merging lanes" may implicate is "move a vehicle right or left upon a highway."

Burton testified at the administrative hearing. She testified that she drove on the highway from the time she left St. Maries to the time of the stop and did not "merge or exit from the highway." She testified that she was climbing a hill and, at that point, she was in the right-hand lane with a passing lane existing on the left. She stated that where the two lanes became one, the left lane disappeared. She also stated, however, that she had passed a sign that indicated that the two lanes merged, but it did not indicate which lane disappeared. Burton testified that she understood from the officer that she had been stopped for failing to signal where the two lanes became one. Finally, she testified that at no time did she turn. Again, nothing from the officer described Burton's movement on the highway other than "merging lanes."

Based upon the evidence presented, the hearing officer determined that the police officer had probable cause to stop Burton, finding that "Officer Hilton observed the vehicle driven by Burton fail to use the vehicle's signals when merging from lane of travel to another lane of travel as required by Idaho Code § 49-808(1)." Thus, the hearing officer apparently determined that traveling through the point where the right and left-hand lanes again became one was a "merging

6

from lane of travel to another lane of travel." The hearing officer did not find that Burton executed a "merge onto or exit from a highway," as that phrase is used in the statute. Therefore, the hearing officer's determination that a signal was required must have been based upon the language in the statute requiring a signal in order to "move a vehicle right or left upon a highway."

The hearing officer did not expressly find that Burton steered her vehicle to the left.[1] There is no evidence in the record that Burton steered her vehicle in a leftward movement at the point where the right and left lanes became one. She testified that she did not turn at any time. Nothing from the police officer indicated that the vehicle was physically moved to the left at the point where the two lanes became one. Although Burton testified that the left lane ended, the hearing officer made no finding regarding which lane ended.

We do not know, from the state of the record, whether a physical movement to the left, be it ever so slight, was required of Burton at the point where the two lanes became one. In *State v. Dewbre*, 133 Idaho 663, 991 P.2d 388 (Ct. App. 1999), the configuration of the roadway and the attendant movement of the vehicle into and out of the lane of travel seems to have been the point of contention between the lead opinion and the dissent. The dissent appears to have viewed the two-lane area as a bump-out to the left. That is, the single lane of travel, prior to the two-lane area, became the right lane of travel and one was required to steer to the left to enter the left lane. The dissent carried this forward to the exit of the area in which the right lane was described as a straight direction, implying that a vehicle in the left lane would be required to steer to the right to enter the remaining lane, but a vehicle in the right lane would continue straight ahead. *Id*. at 668, 991 P.2d 393.[2] On the other hand, the lead opinion viewed the roadway and the attendant steering requirements differently. The lead opinion seems to have viewed the roadway as a dual bump-out. That is, the single lane of travel bumped right and left at the point of the split. As such, one was required to steer to the right to enter the right-hand lane or steer to the left to enter the left-hand lane lest, continuing in a straight line, the vehicle would straddle the dashed line

---

[1]     Although the district court stated that "ITD found that Officer Hilton stopped defendant for moving left on the roadway without signaling, in violation of I.C. § 49-808."

[2]     This description is somewhat curious as the painted arrows near the end of the area indicated that the right lane of travel traffic should merge left. *Id*. at 664, 991 P.2d 389.

between the two lanes. At the end of this portion of the highway, according to the lead opinion, being in the right lane, Dewbre was required to make a turning movement to the left. *Id*. at 666, 991 P.2d 391.

From the affidavit of probable cause, the testimony of Burton, the findings of the hearing officer and the district court, we know only that the right and left lanes merged. We are left to imagine the roadway. We do not know if the configuration was similar to that described by the lead opinion in *Dewbre* or, conversely, by the dissent in *Dewbre*.[3] We do not know if the roadway itself obviously required a physical move to the right or left for either lane to enter the single remaining lane. Therefore, the record in this case is, in my view, inadequate to determine whether Burton was required to make a steering right or left movement.

I agree that common sense tells us that not all physical movement right or left on a highway, such as minor weaving within one's lane or rounding a bend, is violative of the statute. Thus, the statute does not literally apply to all right or left movement. So, common sense must infuse our understanding of the right or left movements to which the statute applies and which trigger the requirement to signal. The district court, and I think implicitly the hearing officer, determined that movement was required, and the statute triggered, when the lanes were viewed relative to each other. The district court stated: "Although the ending of Burton's lane of travel required her to enter the parallel lane of travel, Burton's entry into the other lane was nonetheless a leftward movement *when viewed relative to that other lane*." (Emphasis added.) As recognized in *Dewbre*, signaling puts other potentially affected drivers on notice of the signaling driver's intention. *Dewbre*, 133 Idaho at 666-67, 991 P.2d at 391-92. Thus, one should signal when other *potential* traffic in the area may be affected by the vehicle's movement. Even where the highway's structure forces two lanes to come together, and intention may be obvious, vehicles on the right or left may be affected. This may be the appropriate reading of the statute.

_____

[3] I agree with the lead opinion in *Dewbre*, that, as that opinion described the roadway, when the two lanes came together as one, a movement to the right or left, depending upon which lane the vehicle was in, would be required. Physically, in order for the two lanes to squeeze down to the size of the single lane, movement right or left would be required. On the other hand, the analysis may be different if, as described by the dissent in *Dewbre*, entry into and exit from the two-lane area could be achieved in the right-hand lane by maintaining the vehicle arrow-straight.

8

Regardless of whether, under the statute, signaling is required only by literal (steering) movement to the right or left, or right or left movement relative to other potential traffic, I cannot adequately determine, from the record in this case, whether Burton would have been required to signal. Therefore, I would hold that the record does not support a determination that the officer had legal cause and reverse the suspension. In addition, since, in my view, the record does not present us with sufficient detail of the circumstances, I do not believe that we can or should engage in a constitutional analysis of the statute "as applied" to the circumstances. *See State v. Drennen*, 122 Idaho 1019, 1023, 842 P.2d 698, 702 (Ct. App. 1992) (deferring constitutional analysis until further record development). *See Gonzalez v. Metropolitan Transportation Authority*, 174 F.3d 1016, 1024 (9th Cir. 1999) (record inadequate to determine whether regulation applied in a constitutional manner); *State v. Indrisano*, 640 A.2d 986, 990 (Conn. 1994) (in order to review claim that statute is vague as applied, the record must reflect the situation which formed the basis of the action against the defendant).[4]

---

[4]  I would note, that our research has revealed that nearly every state uses the same or similar statutory language and we have located no case discussing an as applied constitutional challenge.